UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MIRIAM D. BIBBS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:20-cv-939-RLY-MG |
| WILLIAM MILLER, RICHARD COSBY, and | ) | |
| JOHN ARVIN, | ) | |
| | ) | |
| *Defendants.* | ) | |

## ORDER

Pending before the Court are three motions.  Defendants have filed two Motions to Compel certain records from *pro se* Plaintiff Miriam Bibbs' medical and mental health care providers. [Filing No. 74; Filing No. 79.]  Also before the Court is Plaintiff's "Motion for Telephonic Status Conference for Discovery Dispute."  [Filing No. 76.]  Each motion is addressed below.

### I.
### DEFENDANTS' MOTIONS TO COMPEL
### [FILING NO. 74; FILING NO. 79]

In a prior Order addressing a Motion to Quash and a Motion for a Protective Order filed by Plaintiff relating to medical records subpoenaed from an emergency services provider, the Court explained that "because Ms. Bibbs is claiming damages relating to both her physical health and her emotional health, Ms. Bibbs has made her medical and psychological records relevant in this case, even records that pre-date and post-date the March 28, 2018 incident." [Filing No. 56 at 2 (citing *Kuri v. City of Chicago*, 2015 WL 13877405, at *2 (N.D. Ill. Jan. 12, 2015) and *Mlsna v. Union Pac. R.R. Co.*, 2021 WL 940861, at *1 (W.D. Wis. Mar. 12, 2021)).  Thereafter, the Court entered a Protective Order permitting Plaintiff's medical and mental health records produced in this litigation to be kept confidential.  [Filing No. 62.]

In a subsequent telephonic status conference, the Court again reiterated to Plaintiff that her medical and mental health records are discoverable in this case. [Filing No. 65.] Defendants attempted to depose Plaintiff on September 2, 2021, but during the deposition, Plaintiff refused to answer almost every question—including those related to her medical and mental health history—with a "work product" objection. [Filing No. 66; Filing No. 73-1.] For example, Plaintiff responded as follows to a line of questioning about her treatment at Adult & Child Health:

Q.    And what were you visiting Adult & Child for?

A.    I'm objecting to the question under legal work product doctrine.

Q.    Adult & Child, in order for me to get your records there, I've been informed by Adult & Child that it needs your signature to release your records, and it provided me with a form to fill out. Are you willing to complete that form?

A.    Any documents you want, it needs to be modified.  It needs to be addressed accordingly.  I'm not going to let you worry me about Pap smears and having children and all that.  Anything you want has to relate to this.  Other than that, I'm not waiving my right to legal work product doctrine.

Q.    So if I send you that form from Adult & Child, will you complete that and send it back to me so I can get your records?

A.    Again, I answered your question, and I'm not waiving my right to legal work product doctrine.

Q.    I can't tell if you are agreeing to sign that form.

A.    I told you when it's modified, anything that you want that's modified. I'm not waiving my right to legal work product doctrine. However, I will answer you right now. Whatever we can come to an agreement on, I'm willing to give you. Anything other than what we're talking about, what you need for this situation, I'm not willing to do.

Q.    So when we had a status conference with the judge last month, we had a discussion about this, and the judge overruled your objections and stated that your medical records are relevant.

A.    Right, right. But he didn't say to what extent.

Q.      He stated that the defendants are entitled to look at your medical records, and that the defendants may issue a subpoena to your medical providers.

A.      Yes. And it's Oakley Drive, and you're asking for irrelevant information.

Q.      I understand you made the same objection to the judge, and the judge on the record overruled your objections. Do you remember that?

A.      Right.

[Filing No. 73-1 at 11-12.]

The Court held a discovery hearing on September 16, 2021, and Plaintiff's deposition was reconvened.   [Filing No. 77.]   During the hearing, the Court once again told Plaintiff that her medical and mental health records were discoverable.   Nevertheless, Plaintiff refused to sign an authorization for the release of her records without identifying specific objections to Defendants' requests.   [Filing No. 77.]

The subpoenas to both Adult & Child Health and the Sidney & Lois Ezkenazi Hospital request the following documents:

1.      All medical, psychological and/or mental health records or data of any kind;
2.      All file cover notations;
3.      All patient initial visit information sheet;
4.      All doctors and nurses notes, handwritten and typed;
5.      All lab and/or test reports;
6.      All X-rays or other films;
7.      All correspondence to and from attorneys and/or physicians;
8.      All billing statements and/or invoices and lien documents.

[Filing No. 75 at 3; Filing No. 79-1 at 3.]

Defendants then filed the instant Motions to Compel.  First, Defendants have filed a Motion to Compel, [Filing No. 74; Filing No. 75], seeking an order requiring the production of medical records sought in a Fed. R. Civ. P. 45 subpoena to Adult & Child Health.  Second, is a similar Motion to Compel filed by Defendants seeking an order compelling Eskenazi Hospital to produce Plaintiff's medical and mental health records.  [Filing No. 79.]  Both Adult & Child Health and

Eskenazi Hospital informed Defendants that they require a patient to sign a release in order to provide the patient's records.  [Filing No. 74 at 2; Filing No. 79 at 1-2.]  Thus far, Plaintiff has refused to sign a release for medical and mental health records.  [Filing No. 74 at 2.]

Plaintiff has filed an "Objection to Motion to Compel Production of Medical, Psychological, Etc., Documents, Bills."  [Filing No. 78.]  Plaintiff contends that *she* has provided "all the documents available" and that *she* "can't be compelled to provide documents that do not exist."  [Filing No. 78 at 1.]  She further responds the Motion to Compel is "irrelevant and all documents available[,] the Defendant have access to and[/]or [have] been provided."  [Filing No. 78 at 1.]

Defendants did not submit a reply brief.

A.    **Discoverability of Medical and Mental Health Records**

As a baseline, the Court reiterates its prior rulings that Plaintiff has placed certain aspects of her physical and mental health at issue in this case.

In her Complaint, Plaintiff alleges that certain officers with the Indianapolis Metropolitan Police Department violated her constitutional rights in connection with a March 28, 2018 visit to her home.  [*See* Filing No. 6 at 3-4.]  Following the Court's Order screening her Complaint, the claims that remain are Plaintiff's claims against Officer Miller, Officer Cosby, and Lieutenant Arvin arising from the March 28, 2018 incident at her home, including, among others, illegal search and seizure, false arrest, failure to intervene, and excessive force.  [*See* Filing No. 6 at 6.]  Ms. Bibbs alleges that Officer Miller "assaulted [her] causing numerous injuries to her face[,] arms[,] legs[,] and buttocks, some of which remain unhealed," [Filing No. 1 at 30], and that "[D]efendants by action or inaction caused physical, emotional, [and] mental[] distress including fear of Law enforcement," [Filing No. 1 at 53].  In the proposed Case Management Plan filed with

the Court, Plaintiff further alleges that she suffered "bodily injury with permanent scars, extreme emotional distress requiring treatment for depression, anxiety, and PTSD." [Filing No. 28 at 2.] In her initial disclosures, Plaintiff identifies Meredith Dugan from the Crisis Unit at Eskenazi Hospital as a potential witness, [Filing No. 34 at 3], and "[p]ictures of physical injuries" and a "[l]etter from therapist for treatment for depression, anxiety, and PTSD related to [the] incident" as potential exhibits, [Filing No. 34 at 4].

"A party cannot put a medical issue into play and then prevent h[er] opponent his opponent from reviewing records relevant to that issue. In such a situation, the party either has to forgo the claim or disclose the records." *Mlsna*, 2021 WL 940861, at *1 (W.D. Wis. Mar. 12, 2021). Furthermore, when a plaintiff claims emotional distress and mental anguish resulting from the events alleged in the complaint, the plaintiff has waived any privacy and confidentiality privilege that may have otherwise attached. *Kuri*, 2015 WL 13877405, at *2. Here, Plaintiff has plainly placed her physical and mental health records squarely at issue in this case. Therefore, any potentially applicable privilege—such as HIPPA or patient-therapist—has been waived, and Defendants are entitled to discover certain physical and mental health information about Plaintiff.

Plaintiff's argument that *she* has provided all the documents in *her* possession misses the point. A subpoena is directed not to a plaintiff in litigation, but rather to third parties who are not litigants in the case, such as the medical care providers in this case.

As reflected in her deposition testimony, Plaintiff's primary objection to the subpoenas to Adult & Child Health and Eskenazi Hospital appears to be the scope of records sought. She worries that signing the release will enable Defendants to access records related to birthing her children and other unrelated matters. [*See* Filing No. 73-1 at 11-12.] Thus, Plaintiff seems to contend that only records related to injuries Plaintiff sustained on March 28, 2018 are relevant to

her claims.  But Plaintiff does not explain how medical care providers could sift through records in such a way.  Medical release forms generally "do not allow the requester to exclude records by individual ailment."  *Voss v. Marathon Cty.*, 2020 WL 1139860, at *5 (W.D. Wis. Mar. 9, 2020). And certainly, Plaintiff has not provided a reason for doing so here.

However, Defendants' subpoenas do not contain any time limitation and are therefore overbroad.  [*See* Filing No. 75 at 3; Filing No. 79-1 at 3.]  The Court finds that a reasonable time limitation is appropriate here and will limit the temporal period to March 28, 2016 (i.e., two years prior to the incident) to the present.

**B.**   **Plaintiff's Obligation to Sign the Release or Risk Dismissal**

The question then is whether to order the medical care providers to produce the documents or order Plaintiff to sign a release.  Courts generally put the onus on the party to make the choice to either (a) sign an appropriate release to obtain medical and mental health information, or (b) forego his or her claims.  *See, e.g.*, *Mlsna*, 2021 WL 940861, at *1; *Johnson v. Rogers*, 2018 WL 10246993, at *5 (S.D. Ind. Apr. 20, 2018).  That is what the Court will do here.

Therefore, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Compel directed at Adult & Child Health, [Filing No. 74], and Motion to Compel directed at Eskenazi Hospital, [Filing No. 79], and the Court **ORDERS** Plaintiff to sign and return to Defendants the records release forms for Adult & Child Health and Eskenazi Hospital, so long as those releases are limited to March 28, 2016 to present.  Plaintiff is warned that <u>failure to sign the releases may result in dismissal of her claims with prejudice</u>.  *See* Fed. R. Civ. P. 37(b)(2)(A).

## II.
### PLAINTIFF'S MOTION FOR TELEPHONIC STATUS CONFERENCE
### [FILING NO. 76]

Turning to Plaintiff's Motion for Telephonic Status Conference for Discovery Dispute, [Filing No. 76], Plaintiff first says that she has experienced issues with the manner in which Defendants have served her with documents in this case, alleging that sometimes she is served by defense counsel by email and sometimes by U.S. Mail.  [Filing No. 76 at 1.]   Plaintiff asks for "clarification of all distribution and notification notices."  [Filing No. 76 at 1.]  Plaintiff next says that she "made a discovery request and had no objection of lengthening response [sic] to request to give the Defendants' counsel a chance to respond," and that she "is willing to carry discovery up to 60 days past the date of October 9, 2021."  [Filing No. 76 at 1-2.]

Defendants did not respond to Plaintiff's Motion.

The Court will clarify by interpreting Plaintiff's Motion as a written consent to service by email under Fed. R. Civ. P. 5(b)(2)(E) and **GRANTS** the Motion to the extent that the Court **ORDERS** Defendants to serve Plaintiff under Fed. R. Civ. P. 5 by email at miriamdbibbs@gmail.com.  Plaintiff should note that although Defendants are to serve her by email, she will continue to receive Orders and Entries from the Court by U.S. Mail.  The Court cannot discern what other relief Plaintiff may be requesting and sees no need to schedule a telephonic status conference at this time and therefore **DENIES** the remainder of her Motion.

## III.
### CONCLUSION

For the foregoing reasons, Defendants' Motions to Compel [74] and [79] are **GRANTED in part** and **DENIED in part**.  The Court **ORDERS** Plaintiff to sign and return to Defendants the release forms for Adult & Child Health and Eskenazi Hospital, so long as those releases are limited to March 28, 2016 to present.  Defendants are **ORDERED** to provide Plaintiff with the modified

release forms upon entry of this Order.  Plaintiff is **ORDERED** to return the signed release forms within **seven (7) days** of receipt from Defendants.  Plaintiff's claims may be subject to dismissal if she fails to sign and return the release forms as required by this Order.

Plaintiff's Motion for Telephonic Status Conference, [76], is **GRANTED to the extent** that the Court **ORDERS** Defendants to serve Plaintiff under Fed. R. Civ. P. 5 by email at miriamdbibbs@gmail.com going forward and **DENIED in all other respects**.

Date: 10/22/2021

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to**

Ms. Miriam Bibbs
5214 Ruskin Pl. W.
Indianapolis, IN 46224